MEYER *v.* RICHMOND.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE
OF VIRGINIA.

No. 48. Submitted October 14, 1898. — Decided November 28, 1898.

The plaintiff's declaration, in a case pending in a *nisi prius* court in Virginia, set forth that he was the owner in fee of a lot of land fronting on Eighth street between Cary and Canal streets, in Richmond, on which were located two brick buildings, the first floor of which was used for store purposes and the second story as dwellings; that said property, previous to the obstruction of Eighth street, as hereinafter described, was very profitable as an investment, being continuously rented to good tenants, who promptly paid remunerative rents for the same; that on the 25th

Statement of the Case.

day of June, 1886, the city council of Richmond, by ordinance, authorized the Richmond and Alleghany Railway Company to obstruct for the distance of sixty feet (commencing at Canal street in the direction of Cary street) Eighth street, and by virtue of which said railway company wholly obstructed and occupied said street for said distance with its tracks, sheds, fences, etc., except to pedestrians, for whom said company was required to provide by overhead bridge and stairway approaches thereto. It further was averred that by means of this obstruction, so made by said company by authority of said city, travel along said street was arrested and the property rights of the petitioner, as an abutter upon said street, were not only substantially injured, but practically destroyed; that the city had no right under the Constitution and laws of the land to authorize the said railroad company to close said street or place obstructions therein without proper legal proceedings for that purpose and the making of just compensation to such abutting owners as might be injured by said action; that this unconstitutional and illegal action rendered said defendants liable to the petitioner, as trespassers on his property, for all damages that he had sustained not common to the public; that the obstructions were in themselves nuisances which the city was charged with the duty of abating and moving, and that every day's continuation of the same was a new offence. A general demurrer being entered, judgment was given for defendants. The plaintiff moved to set aside said judgment, solely on the ground that the act of the general assembly of Virginia, approved May 24, 1870, providing a charter for the city of Richmond, so far as it authorized the passage of the ordinance in the declaration mentioned, as well as said ordinance, is unconstitutional and void, because in conflict with the Fourteenth Amendment of the Constitution of the United States, which prohibits any State from depriving any person of property without due process of law, and therefore there was no warrant of law for the closing of said street; but the court overruled said motion and refused to grant said motion and to set aside said judgment; to which action of the court the plaintiff excepted. The Supreme Court of Appeals of the State sustained that judgment, whereupon a writ of error was sued out to this court. *Held,*

(1) That the constitutional question so raised was set up in time, and this court has jurisdiction.

(2) That the judgment of the state court was right, and should be affirmed.

THIS is a common law action of trespass on the case, and was brought by plaintiff in error against the defendants in error in one of the *nisi prius* courts of the State of Virginia. The substance of the plaintiff's declaration is as follows:

That he was the owner in fee of a lot of land fronting on Eighth street between Cary and Canal streets, on which were

located two brick buildings, the first floor of which was used for store purposes and the second story as dwellings; that said property, previous to the obstruction of Eighth street, as hereinafter described, was very profitable as an investment, being continuously rented to good tenants, who promptly paid remunerative rents for the same; that on the 25th day of June, 1886, the city council of Richmond, by ordinance, authorized the Richmond and Alleghany Railway Company to obstruct for the distance of sixty feet (commencing at Canal street in the direction of Cary street) Eighth street, and by virtue of which said railway company wholly obstructed and occupied said street for said distance with its tracks, sheds, fences, etc., except to pedestrians, for whom said company was required to provide by overhead bridge and stairway approaches thereto. It was averred in said declaration that by means of this obstruction, so made by said company by authority of said city, travel along said street was arrested and the property rights of your petitioner, as an abutter upon said street, were not only substantially injured, but practically destroyed; that the city had no right under the Constitution and laws of the land to authorize the said railroad company to close said street or place obstructions therein without proper legal proceedings for that purpose and the making of just compensation to such abutting owners as might be injured by said action; that this unconstitutional and illegal action rendered said defendants liable to your petitioner, as trespassers on his property, for all damages that he had sustained not common to the public; that the obstructions were in themselves nuisances which the city was charged with the duty of abating and removing, and that each day's continuation of the same was a new offence; that the rights, privileges and obligations of said Richmond and Alleghany Railway Company had been legally transferred to and assumed by said Chesapeake and Ohio Railway Company, and that it, the said last-named company, now maintained the said obstructions and was therefore liable, jointly with said city of Richmond, for the said trespasses. A plat of the *locus in quo* and a copy of said ordinance were made parts of said declaration.

Damages were claimed in the sum of five thousand dollars.

On the 9th of September, 1895, the defendants entered a general demurrer to the whole declaration and each count thereof, in which the plaintiff joined, and on the 27th of December, 1895, the court sustained the demurrer and gave judgment for the defendants, dismissing the action.

And thereupon the plaintiff, by counsel, moved the court to set "aside the said judgment and enter judgment for him on said demurrer, and it being represented to the court that it is the intention of the plaintiff in the case of H. Wythe Davis against The City of Richmond and The Chesapeake and Ohio Railway Company to apply for a writ of error to the judgment of this court entered this day in that cause, and the questions involved in that case being the same as in this case, the court takes time to consider of said motions, and by consent of parties this case is retained on the docket of this court, and the determination of said motions to await the result of the application for a writ of error in the case of H. Wythe Davis against The City of Richmond and The Chesapeake and Ohio Railway Company."

On the 31st day of January, 1896, the following proceedings were had:

"This day came the parties again, by their attorneys, and the court, being now advised of its judgment to be rendered herein, on the motion of the plaintiff to set aside the judgment rendered on the demurrer to the plaintiff's declaration and to each count thereof, doth refuse to set aside said judgment.

"And thereupon the plaintiff again moved the court to set aside said judgment entered on the 27th day of December, 1895, sustaining defendants' demurrer to the declaration and to each count thereof, solely on the ground that the act of the general assembly of Virginia, approved May 24, 1870, providing a charter for the city of Richmond, (Acts 1869–'70, p. 120,) so far as it authorized the passage of the ordinance in the declaration mentioned, as well as said ordinance, is unconstitutional and void, because in conflict with the Fourteenth Amendment of the Constitution of the United States, which prohibits any

State from depriving any person of property without due process of law, and therefore there was no warrant of law for the closing of said street as claimed by said defendants; but the court overruled said motion and refused to grant said motion and to set aside said judgment; to which action of the court the plaintiff excepted and filed his bill of exception, which was signed, sealed and enrolled, and made a part of the record."

The plaintiff then presented a petition to the Supreme Court of Appeals of Virginia, the court of last resort of that State, asking for a writ of error to said judgment, but said court rejected the petition by the following order:

" VIRGINIA :

" In the Supreme Court of Appeals held in the state Library Building, in the city of Richmond, on Thursday, February 20, 1896.

" The petition of Engelbert Meyer for a writ of error from a judgment rendered by the law and equity court of the city of Richmond on the 31st day of January, 1896, in a suit in which the petitioner was plaintiff and the city of Richmond and the Chesapeake and Ohio Railway Company were defendants, having been maturely considered and the transcript of the record of the judgment aforesaid seen and inspected, the court being of opinion that said judgment is plainly right, doth reject said petition."

The case is here on error to this order.

In his petition to the Court of Appeals the plaintiff set up and urged a right under the Constitution of the United States as follows :

" Your petitioner now insists that the said law and equity court erred in sustaining said demurrer to his declaration, and also in refusing to set aside its judgment so holding as set forth in his bill of exception.

" Your petitioner therefore humbly submits—

" That under the constitution and laws of this State the free and uninterrupted use of public highways once dedicated to and accepted by the public or acquired by right of eminent domain are for continuous public use, and that the right of

access to and use of such streets by an abutting property holder is property of which the owner cannot under the Federal Constitution be deprived without due process of law.

\*       \*       \*       \*       \*

" The said law and equity court in sustaining the said demurrer denied to your petitioner his constitutional rights, and specially so did it in refusing to set aside its judgment when its attention was called to the unconstitutionality of the act of the general assembly of Virginia approved May 24, 1870, (Acts 1869–'70, p. 120,) so far as it authorized the passage of the ordinance in the declaration mentioned, because in conflict with the Fourteenth Amendment, which prohibits any State from depriving any person of property without due process of law, there being no mode prescribed in said act of the general assembly or in said ordinance for the divesting him of his said property rights by any judicial proceedings whatsoever."

On page 88 is a copy of the diagram showing plaintiff's property and the obstructions complained of.

The ordinance under which the defendants justified is inserted in the margin; also the sections of the Virginia Act of May 24, 1870, c. 101, Acts of Assembly, 1869–'70, under which the ordinance was passed are inserted in the margin.[1]

---

[1] Ordinance permitting the Richmond and Alleghany Railroad Company to close a certain portion of Eighth street and requiring them to erect a foot bridge. (Approved June 28, 1886.)

Be it ordained by the city council of Richmond, First. So much of Eighth street as lies between the present southern boundary line of the property of the Richmond and Alleghany Railroad Company, being also the southern boundary line of the right of way of the James River and Kanawha Company, and a line drawn across Eighth street at right angles, sixty feet north of the face of the north wall of the canal as said wall is now built, shall be, and the same is hereby, closed from the 31st day of August, 1886, until it is required to be reopened in accordance with the provisions of this ordinance: Provided, that the said Richmond and Alleghany Railroad Company shall, on or before the said 31st day of August, begin to erect an overhead foot bridge across the tracks and canal of said railroad on that portion of Eighth street above described, and shall complete the same by the 30th day of September, 1886.

Second. The said bridge and the stairways thereto shall be twelve feet

Statement of the Case.

The constitution of Virginia, so far as involved in this controversy, provides in article 5, section 14, that the general assembly shall not pass " any laws whereby private property shall be taken for public use without just compensation."

wide, and shall be so located, and shall be of such material or materials, design, security and capacity, as may be required by the city engineer; the same shall always be kept and maintained in such condition and repair as may be from time to time required by the committee on streets of the said city council, and always be open to the free use of the public.

Third. Should the said company fail for the space of ten days to put the said bridge or stairways in such condition or repairs, after having been required so to do by said committee, then the said company shall be liable to a fine of fifty dollars, to be imposed by the police justice of Richmond, and each day's failure to be a separate offence; and the city may in all such cases repair said bridge or stairways when not done by said company as herein required, and the expense thereof shall be a debt against the said company recoverable as debts are now recoverable by the city of Richmond.

Fourth. The said company, by exercising the privileges herein granted, doth hereby agree and bind themselves to indemnify and save harmless at all times the said city from any loss or damage suffered by reason of any one being injured in any manner in using said bridge or stairways, or by reason of the building or existence of the same, and shall pay to the city any amount or amounts recovered against said city by any judgment or judgments given on account of any such injuries.

Fifth. The above-described portion of Eighth street shall remain closed until the said Richmond and Alleghany Railroad Company shall have been ordered by the ordinances of two successively elected councils to remove the said overhead bridge and restore the street to its present condition, and to the same authority and control of the city as existed prior to the passage of this ordinance. Whenever it is so ordered to be reopened, the said company shall be allowed three months from the date of the passage of the last of the said two ordinances in which to remove said bridge and stairways, and to restore said Eighth street to the same condition in which it was before the passage of this ordinance. And should the said company fail to remove said bridge and stairways and to restore said Eighth street to its former condition, before the expiration of the said three months, then the said company shall be liable to a fine of one hundred dollars, and each day's default shall be a separate offence; and the said city may remove said bridge and stairways and restore said Eighth street as above mentioned, when not done by said company as above required, and the expense thereof shall be a debt against the said company recoverable as debts are now recoverable by the city of Richmond.

Sixth. The said company doth, by exercising the privileges herein granted, agree and bind itself and its assigns to make no claim to the land now occupied by that portion of Eighth street to be closed, on account of

*Mr. Henry R. Pollard* for plaintiff in error.

*Mr. H. T. Wickham* and *Mr. Henry Taylor, Jr.,* for defendants in error.

___

said closing or the privileges herein granted, and doth fully recognize and admit the right of the said city to reopen the said Eighth street at any time, according to the provisions of this ordinance.

Seventh. Nothing in this ordinance shall conflict in any way with the ordinance approved May 12, 1886, granting permission to the Richmond and Chesapeake Railroad Company to construct a tunnel under Eighth street; and should the bridge constructed under this ordinance obstruct in any manner the said tunnel or tracks leading thereto, it shall be changed by the said Richmond and Alleghany Railroad Company within sixty days after receipt of notice from the committee on streets of the said city council requiring such change to be made.

A copy.    Teste :                    BEN. T. AUGUST, *City Clerk.*

Virginia Acts of Assembly, 1869–'70, pp. 120–146.

SEC. 19. The city council shall have, subject to the provisions herein contained, the control and management of the fiscal and municipal affairs of the city and of all property, real and personal, belonging to the said city; and may make such ordinances, orders and by-laws, relating to the same, as it shall deem proper and necessary. They shall likewise have the power to make such ordinances, by-laws, orders and regulations as they may deem desirable to carry out the following powers which are hereby vested in them :

  *  *  *  *  *  *  *

VII. To close or extend, widen or narrow, lay out and graduate, pave and otherwise improve streets and public alleys in the city, and have them properly lighted and kept in good order; and they shall have over any street or alley in the city, which has been or may be ceded to the city, like authority as over other streets or alleys. They may build bridges in and culverts under said streets, and may prevent or remove any structure, obstruction or encroachment over or under, or in a street or alley, or any sidewalk thereof, and may have shade trees planted along the said streets; and no company shall occupy with its work the streets of the city without the consent of the council. In the meantime no order shall be made and no injunction shall be awarded, by any court or judge, to stay the proceedings of the city in the prosecution of their works, unless it be manifest that they, their officers, agents or servants, are transcending the authority given them by this act, and that the interposition of the court is necessary to prevent injury that cannot be adequately compensated in damages.

  *  *  *  *  *  *  *

SEC. 22. The council shall not take or use any private property for streets or other public purpose without making to the owner or owners

Mr. Justice McKenna, after stating the case, delivered the opinion of the court.

The jurisdiction of this court is challenged. The defendants in error claim that "the declaration shows no point is therein raised which demanded the consideration by the court of any constitutional question," and they insist further that "if it were intended to raise the question that the charter and ordinance were unconstitutional, and in consequence thereof plaintiff was deprived of his property without due process of law, the same should have been specially set up as claimed by apt language in the declaration so as to bring the question to the attention of the court when it had to pass on the demurrer." This certainly was not done, and if it was an indispensable condition to the jurisdiction of this court it has none.

But it was done subsequently, as we have stated, and, whatever the ground of the court's ruling on the demurrer and on the first motion to reverse that ruling, the second motion was unequivocally based on the invalidity of the city ordinance because of its asserted conflict with the Fourteenth Amendment of the Constitution of the United States, and the court's ruling necessarily responded to and opposed the grounds of the motion — necessarily denied the right specially set up by him under the Constitution.

Plaintiff's motion and the special grounds of it and exceptions to the ruling of the court were embraced in a bill of exceptions, and allowed and became part of the record on his petition to the Supreme Court of Appeals of Virginia for a review and reversal of the judgment, and the petition besides explicitly set up and urged a right under the Constitution of the United States.

thereof just compensation for the same. But in all cases where the said city cannot by agreement obtain title to the ground necessary for such purposes, it shall be lawful for the said city to apply to and obtain from the circuit or county court of the county in which the land shall be situated, or to the proper court of the city having jurisdiction of such matters, if the subject lies within this city, for authority to condemn the same; which shall be applied for and proceeded with as provided by law.

The Court of Appeals rejected the petition. Its order recited ". . . that, having maturely considered, and the transcript of the record of the judgment aforesaid seen and inspected, the court, being of opinion that such judgment is plainly right, doth reject said petition."

Necessarily, therefore, the Supreme Court of Appeals did as the court of the city of Richmond did — considered the right which plaintiffs claimed under the Constitution of the United States, and denied the right. *Chicago, Burlington &c. Railroad* v. *Chicago*, 166 U. S. 226, 228.

So far the conditions of the power of review by this court existed. A right under the Constitution of the United States was specially set up and the right was denied. Was it set up in time? It has been repeatedly decided by this court that to suggest or set up a Federal question for the first time in a petition for a rehearing in the highest court of a State is not in time. *Texas & Pacific Railway* v. *Southern Pacific Railroad*, 137 U. S. 48, 54; *Butler* v. *Gage*, 138 U. S. 52; *Winona & St. Peter Railroad* v. *Plainview*, 143 U. S. 371; *Leeper* v. *Texas*, 139 U. S. 462; *Loeber* v. *Schroeder*, 149 U. S. 580.

In all of these cases the Federal question was not presented in any way to the lower court nor to the higher court until after judgment. It is not, therefore, decided that a presentation to the lower court at some stage of the proceedings and in accordance with its procedure, and a presentation to the higher court before judgment, would not be sufficient.

In *Loeber* v. *Schroeder* the Court of Appeals of Maryland, having before it for review a judgment of one of the lower state courts, reversed such judgment, and, having denied a rehearing on April 28, 1892, issued its order for a *fieri facias* against Loeber for the amount of the judgment decreed returnable to the lower court. On April 29, 1892, Loeber entered a motion before that court to quash the writ because the decree on which the writ was issued and the writ were void, because said writ would deprive him of his property without due process of law, and because it was issued in violation of the Constitution of the United States and amendments thereto. The motion was denied and Loeber prosecuted an

appeal which affirmed the order of the lower court, holding that the state law upon which it had made its decision was not in conflict with the Constitution of the United States. From this judgment of the Court of Appeals, Loeber prosecuted a writ of error to this court assigning the unconstitutionality of the state law sustained by the Court of Appeals.

Mr. Justice Jackson, who delivered the opinion of the court, said: "The motion to quash the *fi. fa.* in this case on the grounds that the order of the Court of Appeals, which directed it to be issued, was void for the reasons assigned, stood on no better footing than a petition for rehearing would have done, and suggested Federal questions for the first time, which, if they existed at all, should have been set up and interposed when the decree of the Court of Appeals was rendered on January 28, 1892." In other words, should have been urged when the case was pending and before its decision. It is an inference from the opinion that, if this had been done, the Federal question would have been claimed in time.

In *Chicago, Burlington &c. Railroad* v. *Chicago*, 166 U. S. 226, the right under the Constitution of the United States was claimed by plaintiff in error after verdict and in a motion to set aside the verdict and to grant a new trial. It is true that in that case, being a proceeding to condemn land under the eminent domain act of the State of Illinois, no provision was made for an answer, but this accounts for some but not all of the language of the decision. Mr. Justice Harlan, speaking for the court, said: "It is not, therefore, important that the defendant neither filed or offered to file an answer specially setting up or claiming a right under the Constitution of the United States. It is sufficient if it appears from the record that said right was specially set up or claimed in the state court in such manner as to bring it to the attention of that court." But he said further: "But this is not all. In the assignment of errors filed by the defendant in the Supreme Court of Illinois these claims of rights under the Constitution of the United States were distinctly reasserted."

The similarity of that case to the case at bar is apparent. In both, the constitutional right was claimed in such manner

as to bring it to the attention of the lower court, and its decision was necessarily adverse to such right. In both it was reasserted in the assignment of errors to the higher court, and there again in both the effect of the judgment was to declare the right not infringed by the proceedings in the case. This court, therefore, has jurisdiction, and we proceed to the consideration of the merits.

The plaintiff's constitutional claim is under that provision of the Fourteenth Amendment, which prohibits a State from depriving any person of property without due process of law, and he avails himself of it by the contention (which we give in his own language):

"That under the constitution and laws of the State of Virginia, the free and uninterrupted use of highways, once dedicated to and accepted by the public, or acquired by the right of eminent domain, are for continuous public use, and that, when relying upon that fact, important public and private property rights have been acquired, the highway cannot be permanently diverted to a private use without proper compensation being made to those injured, and as a consequence, any person or persons so diverting such highway are trespassers and liable in damages to the parties injured."

The proposition is very general. To make it available to plaintiff in error it must be held to cover and protect an owner whose property abuts on one part of a street from damage from obstruction placed in another part of the street and not opposite his property — not only a physical taking of his property, but damages to it — not only direct damages, but consequential damages. All of these aspects of the proposition seem to be rejected by the decision of the Supreme Court of Appeals of Virginia on the plaintiff's petition for writ of error. The petition submitted for decision the power of the city of Richmond to make or authorize the obstruction complained of under its charter, and the constitution and laws of Virginia as well as the prohibition of the Constitution of the United States. If the decision necessarily passed on and denied the latter as we hold it did, and hence entertain jurisdiction to review its judgment, it necessarily passed on and denied the

former. If under the constitution and laws of Virginia whatever detriment he suffered was *damnum absque injuria*, he cannot be said to have been deprived of any property. *Marchant* v. *Pennsylvania Railroad*, 153 U. S. 380.

The plaintiff quotes *Western Union Telegraph Co.* v. *Williams*, 86 Virginia, 696; *Hodges* v. *Railroad Co.*, 88 Virginia, 636; *Norfolk City* v. *Chamberlain*, 29 Gratt. 653; *Buntin* v. *Danville*, 93 Virginia, 200. The case at bar is not within the principle of these cases. These were concerned with erections immediately in front of the abutting owner's property, and it was held that he owned to the middle of the highway, subject only to the easement of the latter; that it was for the easement only for which he was compensated, and that any other use was an additional servitude and its authorization illegal unless paid for.

In *Home Building &c. Co.* v. *Roanoke*, 91 Virginia, 52, the city of Roanoke authorized the erection of a bridge across a street in the city and itself constructed the approaches to it. These approaches were sixteen feet high and thirty-five wide, but did not extend to either side of the street, but left on each side about seven and one half feet unoccupied on Randolph street, on which the complainant's lot was situated, available for its use and that of the public. It was held that the city was not liable.

The substantial thing is not that one may be damaged by an obstruction in a street — not that one may be specially damaged beyond others, but is such damage a deprivation of property within the meaning of the constitutional provision? According to the Virginia cases an additional servitude may be said to be another physical appropriation, and hence another taking, and must be compensated. But the plaintiff's case is not within this doctrine, nor is there anything in the decisions of Virginia which makes consequential damages to property a taking within the meaning of the constitution of that State. Decisions in other States we need not resort to or review. Those of this court furnish a sufficient guide. *Transportation Co.* v. *Chicago*, 99 U. S. 635; *Chicago* v. *Taylor*, 125 U. S. 161; *Marchant* v. *Penn-*

*sylvania Railroad*, 153 U. S. 380; *Gibson* v. *United States*, 166 U. S. 269.

In *Transportation Company* v. *Chicago*, it was decided "that acts done in the proper exercise of governmental power and not directly encroaching on private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision." Removing any apparent antagonism of this proposition to *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166, and *Eaton* v. *Boston, Concord & Montreal Railroad Co.*, 51 N. H. 504, it was further said that in those cases "the extremest qualification of the doctrine is to be found, perhaps," and they were discriminated by the fact that in them there was a permanent flooding of private property, hence a "taking" — "a physical invasion of the real estate of the owners and a practical ouster of his possession."

In *Chicago* v. *Taylor*, Taylor sued to recover damages sustained by reason of the construction by the city of a viaduct in the immediate vicinity of his lot. The construction of the viaduct was directed by special ordinances of the city council. The facts were:

"For many years prior to, as well as at, the time this viaduct was built, the lot in question was used as a coal yard, having upon it sheds, machinery, engines, boilers, tracks and other contrivances required in the business of buying, storing and selling coal. The premises were long so used, and they were peculiarly well adapted for such business. There was evidence before the jury tending to show that, by reason of the construction of the viaduct, the actual market value of the lot, for the purposes for which it was specially adapted, or for any other purpose for which it was likely to be used, was materially diminished, access to it from Eighteenth street being greatly obstructed, and at some points practically cut off; and that, as a necessary result of this work, the use of Lumber street, as a way of approach to the coal yard by its occupants and buyers, and as a way of exit for teams carrying coal from the yard to customers, was seriously impaired. There was, also, evidence tending to show that one of the

results of the construction of the viaduct, and the approaches on either side of it to the bridge over Chicago River, was that the coal yard was often flooded with water running on to it from said approaches, whereby the use of the premises as a place for handling and storing coal was greatly interfered with, and often became wholly impracticable.

" On behalf of the city there was evidence tending to show that the plaintiff did not sustain any real damage, and that the inconveniences to occupants of the premises, resulting from the construction and maintenance of the viaduct, were common to all other persons in the vicinity, and could not be the basis of an individual claim for damages against the city."

There was a verdict and judgment against the city, and this was sustained. The tenor of the decision is, that the damages were consequential, and the difference of the ruling from that in *Transportation Co.* v. *Chicago* was explained and based upon a change in the constitution of the State of Illinois, which enlarged the prohibition to the damaging as well as to the taking of private property for public use, and its interpretation by the Supreme Court of the State "that it does not require that the damage shall be caused by a trespass, or an actual physical invasion of the owner's real estate; but if the construction and operation of the improvement is the cause of the damage, though consequential, the party may recover."

In *Marchant* v. *Pennsylvania Railroad Co.*, the plaintiff owned a lot on the north side of Filbert street, Philadelphia; the railroad erected an elevated railroad on the south side of the street and opposite plaintiff's property. It was held by the Supreme Court of Pennsylvania, reversing the trial court, that for the damages hence resulting the plaintiff could not recover. The case was brought to this court by writ of error, the plaintiff urging that her property had been taken without due process of law. The judgment was affirmed. The court, by Justice Shiras, said:

" In reaching the conclusion that the plaintiff, under the admitted facts in the case, had no legal cause of action, the Supreme Court of Pennsylvania was called upon to construe the laws and constitution of that State. The plaintiff pointed

to the tenth section of article 1 of the constitution, which provided that 'private property shall not be taken or applied to public use, without authority of law, and without just compensation being first made or secured;' and to the eighth section of article 16, which contains the following terms: 'Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed, by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction.'

"The first proposition asserted by the plaintiff, that her private property has been taken from her without just compensation having been first made or secured, involves certain questions of fact. Was the plaintiff the owner of private property, and was such property taken, injured or destroyed by a corporation invested with the privilege of taking private property for public use? The title of the plaintiff to the property affected was not disputed, nor that the railroad company was a corporation invested with the privilege of taking private property for public use. But it was adjudged by the Supreme Court of Pennsylvania that the acts of the defendant which were complained of did not, under the laws and constitution of the State, constitute a taking, an injury, or a destruction of the plaintiff's property.

"We are not authorized to inquire into the grounds and reasons upon which the Supreme Court of Pennsylvania proceeded in its construction of the statutes and constitution of that State, and if this record presented no other question except errors alleged to have been committed by that court in its construction of its domestic laws, we should be obliged to hold, as has been often held in like cases, that we have no jurisdiction to review the judgment of the state court, and we should have to dismiss this writ of error for that reason."

In *Gibson* v. *United States*, a dike was constructed in the Ohio River under the authority of certain acts of Congress for the improvement of rivers and harbors. The construction of said dike by the United States substantially destroyed the

landing of Mrs. Gibson by preventing ingress and egress to and from the landing on and in front of her farm to the main or navigable channel of the river, — Held, *damnum absque injuria.* The court by the Chief Justice said: "The Fifth Amendment to the Constitution of the United States provides that private property shall not be taken for public use without just compensation. Here, however, the damage of which Mrs. Gibson complained was not the result of the taking of any part of her property, whether upland or submerged or a direct invasion thereof, but the incidental consequence of the lawful and proper exercise of a governmental power."

*Judgment affirmed.*

Mr. Chief Justice Fuller, with whom Mr. Justice Gray concurred, dissenting on the question of jurisdiction.

I am of opinion that this writ of error should be dismissed. The contention of plaintiff in error is that the validity of the act of the general assembly of Virginia of May 24, 1870, was drawn in question in the state courts on the ground of repugnancy to the Constitution of the United States, and that the decision of the Court of Appeals was in favor of its validity.

The validity of a statute is drawn in question when the power to enact it is denied, and a definite issue in that regard must be distinctly deducible from the record in order for this court to hold that the state courts have adjudicated as to the validity of the enactment under the Constitution.

This case had gone to judgment, and a motion to set aside the judgment had been made and denied, before it was suggested that the act was inconsistent with the Federal Constitution. And that question was then attempted to be raised by a second motion to vacate. But the disposal of motions of this class is within the discretion of the trial court, and only revisable by the appellate tribunal, if at all, when there is a palpable abuse of discretion.

Whether the trial court, in this instance, overruled the second motion because a second motion of that sort, without special cause shown, could not be entertained, or because of

unreasonable delay, it is impossible to say, and to impute to that court the decision of a Federal question when it obviously may have considered that the point was presented too late, seems to me wholly inadmissible. And although in his petition to the Court of Appeals, plaintiff in error recited the action he had taken, and urged that the trial court had erred in sustaining the demurrer to his declaration, and in refusing to set aside the judgment so that the constitutional question suggested might be passed on, that court, in the exercise of appellate jurisdiction only, may well have concluded that the discretion of the court below could not be interfered with.

It does not follow from the bare fact that this second motion presented in terms a single point that that point was disposed of in denying the motion, when other grounds for such denial plainly existed.

It is thoroughly settled that if the record of the state courts discloses that a Federal question has been raised and decided, and another question, not Federal, broad enough to sustain the judgment, has also been raised and decided, this court will not review the judgment; that this is so, even when it does not appear on which of the two grounds the judgment was based, if the independent ground on which it might have been based was a good and valid one; and also where the record shows the existence of non-Federal grounds of decision though silent as to what particular ground was pressed and proceeded on. In other words, the rule is that the record must so present a Federal question that, even if the reasons for decision are not given, this court can properly conclude that it was disposed of by the state courts. If the conflict of a state law with the Constitution and the decision by the state court in favor of its validity are relied on, such decision must appear on the face of the record before the judgment can be reexamined in this court.

In *Klinger* v. *Missouri*, 13 Wall. 257, 263, a juror had declined to take the test oath prescribed by the sixth section of the second article of the constitution of Missouri of 1865, and was discharged from the panel. It was insisted here that he was thus excluded for no other reason than that he refused

to take the oath, and, if this had been so, the question of the repugnancy of the section to the Constitution of the United States would have arisen. But as this court was of opinion that, inasmuch as the grounds the juror assigned for his refusal manifested a settled hostility to the Government, he might "well have been deemed by the court, irrespective of his refusal to take the oath, an unfit person to act as a juryman, and a participant in the administration of the laws;" it was held that "it certainly would have been in the discretion of the court, if not its duty, to discharge him." And Mr. Justice Bradley, delivering the opinion of the court, said: "In this case it appears that the court below had a good and valid reason for discharging the juror, independent of his refusal to take the test oath; and it does not appear *but that* he was discharged for that ground. It cannot, therefore, with certainty, be said that the Supreme Court of Missouri did decide in favor of the validity of the said clause of the state constitution, which requires a juror to take the test oath." There was nothing in the record to show on what ground the trial court excluded the juror, or that the point urged in this court was taken in the Supreme Court of the State, and yet because the trial court might have discharged the juror as matter of discretion, or because of unfitness in the particular suggested, this court decided that its jurisdiction could not be maintained, and the writ of error was dismissed. And see *Johnson* v. *Risk*, 137 U. S. 300; *Dibble* v. *Bellingham Bay Land Co.*, 163 U. S. 63.

We have held that the question whether a party has by laches and acquiescence waived the right to insist that a state statute impaired the obligation of a contract is not a Federal question. *Pierce* v. *Somerset Railway Company*, 171 U. S. 641.

And, certainly, in view of the careful language of § 709 of the Revised Statutes, we ought not to take jurisdiction to revise a judgment of a state court, where a party seeks to import a Federal question into the record, after judgment, by an application so palpably open to decision on non-Federal grounds. I am authorized to state that Mr. Justice Gray concurs in this dissent.