Isidor **SALGANIK** and Anna Salganik, his wife, surviving Directors and Trustees of The Consolidated Beef and Provision Company
and
The Consolidated Beef and Provision Company, a body corporate
v.
**MAYOR AND CITY COUNCIL OF BALTIMORE**, a Municipal Corporation,
and
Housing Authority of Baltimore City.
Civ. No. 9997.

United States District Court
D. Maryland.
March 24, 1961.

---

Albert L. Sklar, Theodore S. Miller, William J. Pittler, and Sklar & Sullivan, Baltimore, Md., for plaintiffs.

Harrison L. Winter, City Solicitor, and W. Thomas Gisriel, Asst. City Solicitor, Baltimore, Md., for City of Baltimore.

Evan A. Chriss and Eugene M. Feinblatt, Baltimore, Md., for Housing Authority of Baltimore City.

THOMSEN, Chief Judge.

Plaintiffs, citizens of Maryland[1], former owners of land and a building in Baltimore City adjacent to the public housing development known as Flag House Courts, have sued Mayor & City Council of Baltimore (the City) and Housing Authority of Baltimore City (the Authority), also citizens of Maryland[2] for damages. They allege in separate counts of their third amended complaint (1) that defendants took plaintiffs' property without due process of law in violation of the Fourteenth Amendment to the Federal Constitution by closing certain streets and alleys, (2) that defendants trespassed on plaintiffs' property during the demolition and construction work incident to the Flag House Courts housing project, and (3) that said trespasses, together with the digging of a ditch in an alley adjacent to plaintiffs' receiving platform during the course of the work, amounted to a taking of plaintiffs' property in violation of the Fourteenth Amendment. Plaintiffs claim jurisdiction under 28 U.S.C.A § 1331. De-

fendants have moved to dismiss the third amended complaint and the several causes of action alleged therein (a) for failure to state a claim on which relief can be granted, or (b) for lack of federal jurisdiction, or both. The parties have agreed that in passing on the motions the court may consider certain additional facts which have been either stipulated by the parties or stated by counsel for plaintiffs to clarify their claims.

The property in question is located on the southwest corner of Lombard and Exeter Streets in Baltimore City, fronting 40 feet on Lombard Street, which runs east and west, and 159 feet on Exeter Street, which runs north and south. The southern half of the property has a greater depth, 80 feet, running back to a T-shaped alley. Before the acts complained of, the upright portion of the T ran south from the crossbar past the west side of plaintiffs' property and past three small properties (known as 114, 116 and 116½ S. Exeter Street, adjacent to plaintiffs' property on the south) to Granby Street, the next east-west street south of Lombard Street. The T-shaped alley did not connect with any street except Granby Street. The building on plaintiffs' property covered the entire lot except the extreme southern portion which was used for parking. This parking lot fronted about 10 feet on Exeter Street but was somewhat wider in the rear along the alley. A receiving platform was located on the western end of the southern portion of the building, abutting on the T-shaped alley; another platform was located on the Lombard Street side of the building. However, all deliveries to plaintiffs' plant were made to the platform which abutted on the alley, and the physical layout of the plant was so arranged that the primary processing area was next to that platform.

---

1. The individual plaintiffs are the surviving directors of the corporate plaintiff, now dissolved, and are therefore trustees under Art. 23, sec. 78 of the Anno.Code of Md., 1957 ed. The corporate plaintiff owned the property in question.

2. The City is a municipal corporation. The Authority is a public corporation incorporated under the provisions of Art. 44A, Anno.Code of Md., 1957 ed.

The Flag House Courts housing project was constructed by the Authority, pursuant to an ordinance of the City.[3] For our purposes, the area of the project may be conceived of as a very thick L, with plaintiffs' property in the crotch. The Authority originally planned to include plaintiffs' property in the area of the project, but for reasons not important to our present problem, it was not included.

The corporate plaintiff ceased business in December 1954, before the completion of the project, but after the demolition work had been in progress for some months.

### First Cause of Action.

By Ordinance No. 773, approved June 26, 1953, in aid of the Flag House Courts project, the City authorized and directed its Department of Assessments to condemn and close certain streets and alleys, including: (1) Granby Street, as it crossed Exeter Street and for two blocks each side of Exeter Street; (2) Exeter Street, south of Granby Street; and (3) the southernmost 43 feet of the T-shaped alley, immediately north of Granby Street, leaving open the cross-bar of the T and that portion of the upright behind plaintiffs' receiving platform and parking lot; the portion of the alley not closed did not connect with any open street or alley.

Lombard Street was left open, so the access to plaintiffs' other platform was not disturbed. Exeter Street was also left open north of Granby Street, but Exeter Street had been designated a one-way street southbound. Some time later the cul-de-sac of Exeter Street from Lombard Street south past plaintiffs' property to what had been the north side of Granby Street was designated a two-way street, so that it is possible not only to enter the parking lot on the southernmost part of plaintiffs' property by way of Exeter Street, but also to leave it by way of Exeter Street, turning off at Lombard Street.

Ordinance No. 773 further provided. "That the proceedings of said Department of Assessments, with reference to the condemnation and closing of the portions of said Streets and Alleys and the proceedings and rights of all parties interested or affected thereby, shall be regulated by, and be in accordance with, any and all applicable provisions of Article 4 of the Code of Public Local Laws of Maryland and the Charter of Baltimore City (1949 Edition) and any and all amendments thereto, and any and all other Acts of the General Assembly of Maryland, and any and all Ordinances of the Mayor and City Council of Baltimore, and any and all rules and regulations in effect which have been adopted by the Director of Assessments and filed with the Department of Legislative Reference."

Article 35 of the Baltimore City Code (1950 ed.) contains the applicable ordinances material to a consideration of this case. The various sections of that Article provide that when an ordinance is passed directing that any street in Baltimore City be closed, the Department of Assessments "shall ascertain whether any and what amount of value in damage will thereby be caused to the owner of any right or interest in any ground or improvements within the City of Baltimore, for which, taking into consideration all advantages and disadvantages, such owner ought to be compensated". The Department must then give public notice of its determination, and thereafter "any person claiming to be interested" may ask the Department to review its initial determination, and to that end may present by testimony and otherwise his objections to the initial determination. After a final decision by the Department and by the Board of Municipal and Zoning Appeals, an appeal may be taken to the Baltimore City Court, where the owner may have a trial by jury.

In their First Cause of Action plaintiffs allege that the closing of the streets and alleys aforesaid amounted to a "tak-

3. Ordinance No. 1309, approved June 28, 1950.

ing" of their property which violated the due process clause of the Fourteenth Amendment to the Federal Constitution. Plaintiffs do not allege that the City denied them the remedies provided by Article 35 of the City Code, outlined above, but plaintiffs contend that those provisions violate Article III, Section 40 of the Maryland Constitution, which provides: "The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."

The first question is whether the closing of Granby Street, of the southern end of the T-shaped alley, and of Exeter Street south of Granby Street, amounted to a "taking" of plaintiffs' property.

The access to the property from Lombard Street and from Exeter Street was not disturbed; it was and is still possible to reach the unclosed portion of the T-shaped alley adjoining the receiving platform by driving south on Exeter Street and turning across the unimproved southern portion of plaintiffs' property, which was used by plaintiffs as a parking lot. The convenient use of the alley and receiving platform was diminished because it is no longer possible to enter the alley from Granby Street. However, it is quite doubtful whether this amounts to a taking under the Fourteenth Amendment. Meyer v. City of Richmond, 172 U.S. 82, 19 S.Ct. 106, 43 L.Ed. 374; Langley Shopping Center v. State Roads Commission, 213 Md. 230, 131 A.2d 690; German Evangelical Lutheran Saint Lucas Congregation of Baltimore v. City of Baltimore, 123 Md. 142, 90 A. 983, 52 L.R.A.,N.S., 889. Cf. City of Rock Hill v. Cothran, 209 S.C. 357, 40 S.E.2d 239; Oler v. Pittsburgh, C., C. & St. L. Ry. Co., 184 Ind. 431, 111 N.E. 619; Central Trust Co. of New York v. Hennen, 6 Cir., 90 F. 593. See also United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206; Nunnally v. United States, 4 Cir., 239 F.2d 521.

■ But assuming without deciding that there was a taking by the City as a result of the closing, the remedy provided by Article 35 of the Baltimore City Code afforded plaintiffs due process of law, within the meaning of the Fourteenth Amendment. Bailey v. Anderson, 326 U.S. 203, 66 S.Ct. 66, 90 L.Ed. 3, and cases cited.

To avoid these authorities plaintiffs contend that Article 35 of the City Code violates Article III, Section 40 of the Maryland Constitution, quoted above, because it does not provide for "prior" payment. That contention is ineffective for a number of reasons.

■ Article III, Section 40 deals with laws enacted by the General Assembly, and not with ordinances enacted by the City pursuant to its Charter, which was adopted under Article XI–A of the Maryland Constitution.

Provisions similar to those now contained in Article 35 of the City Code have been held by the Court of Appeals of Maryland not to violate the Maryland Constitution. Bonaparte v. Mayor & City Council of Baltimore, 131 Md. 80, 101 A. 594; Patterson v. Mayor & City Council of Baltimore, 127 Md. 233, 96 A. 458; Steuart v. Mayor & City Council of Baltimore, 7 Md. 500.

The constitutionality of Article 35 of the City Code has not been raised or questioned by the City or the Authority. The remedy afforded by that Article satisfies the requirements of the Fourteenth Amendment, which does not require that compensation be "first" paid or tendered. Bailey v. Anderson, supra.

If the provisions of the City Code violated the requirements of the State Constitution, plaintiffs might have an action against the City for an injunction or for damages caused by a violation of state law. That would be a state question and not a federal question, and absent diversity of citizenship would not give plaintiffs a right to sue either defendant in a federal court.

Moreover, before the passage of Ordinance No. 773 in June 1953, plaintiffs

and the Authority, through their respective counsel, entered into a written agreement in which the Authority agreed (1) to grant to plaintiff Isidor Salganik, by easement, the right of ingress and egress over a private alley, at least 12 feet wide, to be constructed by the Authority, and to run south from Lombard Street across a portion of the lot adjacent to plaintiffs' property on the east to intersect with the T-shaped alley located in the rear of plaintiffs' property; (2) to grant Salganik a license, to be recorded among the Land Records of Baltimore City, to use for ingress and egress a private alley 10 to 12 feet in width, to be constructed by the Authority along the southern boundary of plaintiffs' property from Exeter Street to the T-shaped alley[4]; (3) to enlarge that portion of the T-shaped public alley lying generally in the rear of the receiving platform from 22.44 feet by 16.5 feet to not less than 30 feet by 19 feet. The Authority reserved the right to dedicate either or both such private alleys for public use. In exchange, plaintiff withdrew his objections to the passage of Ordinance No. 773 and waived all claims for damages for the closing of streets and alleys thereunder, except that he retained the right to make claim before the Department of Assessments for whatever damages they might allow him for the closing of Exeter Street and Granby Street as set forth in the Ordinance.

The First Cause of Action, based upon a claimed violation of the Fourteenth Amendment, does not allege a claim upon which relief may be granted, and must therefore be dismissed.

### Third Cause of Action.

The third cause of action is alleged to be based upon "continuous acts of trespass which deprived the plaintiffs of access to their property in violation of their rights of due process of law guaranteed under the Fourteenth Amendment."[5] In clarification of this claim, plaintiffs' counsel have formally stated that the alleged trespasses and other wrongful acts were (a) the parking of bulldozers on the parking lot on the south side of plaintiffs' property by contractors for the Housing Authority, (b) vandalism during the period of demolition and construction, (c) vibrations resulting from the demolition and construction operations, which caused insulating material in plaintiffs' building to fall from the walls or ceilings, and (d) the digging of a ditch along the alley west of the receiving platform which prevented access to the platform for a considerable period of time.

4. No license as called for by (2) of the agreement has ever been recorded, but the Authority has been ready, willing and able to supply such a license on demand.

5. Specifically they allege: "18. That during the entire course of construction of the said project, the Defendants, their agents, servants, and employees continuously broke into and entered upon the Plaintiffs' property thereby depriving the Plaintiffs of the comfortable, reasonable and beneficial use and enjoyment of said property and improvements by the said continuous and repeated acts of trespass which prevented the Plaintiffs from having access to their property."
"19. That the Plaintiffs were entitled to the comfortable, reasonable and beneficial use and enjoyment of said property and improvements thereon but that as a result of the repeated and continuous acts of trespass of the Defendants, their servants, agents and employees during the entire course of construction of the aforesaid project, the Plaintiffs' use, benefit and enjoyment of said property have been interfered with by a serious, substantial and complete deprivation of access to the property whereby the value of said property has become greatly depreciated and the said beef and provision business has been completely destroyed, necessitating a forced and involuntary abandonment of their property by the Plaintiffs who were forced to cease and abandon all business operations therein, thereby causing the Plaintiffs to become in default of their mortgage obligations resulting in the institution of foreclosure proceedings against said property and the Plaintiffs incurred other wrongs, injuries and damages as a result of the aforesaid acts of the respective Defendants, their agents, servants and employees."

It is apparent that the thrust of the third cause of action is against the Authority, which was in charge of the demolition and construction, rather than against the City.[6] The question is whether the parking of the bulldozers, the acts causing the falling of the insulation, and the digging of the ditch amounted to such a taking of plaintiffs' property, under the circumstances of the case, as would entitle them to just compensation under the due process clause of the Fourteenth Amendment rather than to (a) an action for damages for the alleged wrongful acts and trespasses or to (b) an injunction restraining the continuous acts and trespasses. Such an action for damages or suit for an injunction would have presented state questions and would have been maintainable in the state courts.

The claim is evidently inspired by United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, which held that continued flights over the plaintiffs' land by airplanes flying at a low level amounted to the imposition of a servitude upon the land, for which an action would lie in the Court of Claims under the Constitution. It should be noted that the Court of Claims had stated in its opinion that the easement taken was permanent, and it was apparent that the government intended to continue the flights indefinitely if not permanently. The Court did not depart from established principles, nor suggest that repeated trespasses during the course of a construction project would amount to a taking of property under the Fourteenth Amendment. In the instant case, the period of demolition and construction was of limited duration. Moreover, it is not alleged that any of the trespasses or other wrongful acts were committed under any claim of right by the Authority to park its trucks on plaintiffs' land or to obstruct the alley by reason of its being a public agency, as distinguished from an ordinary owner of adjacent property.

6. The duty to prevent vandalism is the responsibility of the Police Department, which is a State agency and not controlled by the City.

■ The Third Cause of Action, based upon a claimed violation of the Fourteenth Amendment, does not allege a claim upon which relief may be granted, and must therefore be dismissed.

### Second Cause of Action.

■ The second cause of action alleges the same trespasses (except the digging of the ditch), to support an ordinary cause of action for trespass. This admittedly raises state questions and not federal questions and, absent diversity of citizenship, such a claim can be entertained by a federal court only in the exercise of its pendent jurisdiction in connection with another claim over which it has an independent basis of jurisdiction. Hurn v. Oursler, 289 U.S. 238, 245–247, 53 S.Ct. 586, 77 L.Ed. 1148.

Cases dealing with the question whether a federal court should retain and decide such a pendent claim after the federal claim has been disposed of adversely to the plaintiff have applied one or more of several tests, often depending upon the particular fact situation. The tests are not mutually exclusive, and all relevant factors should be considered. One is whether the nonfederal ground is based upon the same (or closely related) facts which form the basis for the federal ground, Hurn v. Oursler, supra. Another is whether the federal claim is "substantial" or "frivolous". Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750; Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062; Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939. Several courts have considered the stage of the proceedings at which the federal claims have been decided, and have emphasized the fact that the court has had to hear the evidence to decide the federal question and should dispose of the whole case. Massachusetts Universalist Convention v. Hildreth & Rogers Co., 1 Cir., 183 F.2d 497–501; State of Georgia v. Wenger, 7 Cir., 187

F.2d 285, 287–288, certiorari denied 342 U.S. 822, 72 S.Ct. 41, 96 L.Ed. 621.

 Where the complaint fails to allege any federal cause of action upon which relief can be granted and is dismissed on motion, a federal court should not consider testimony solely for the purpose of disposing of a common law controversy not otherwise within its jurisdiction. As Judge Magruder said, concurring in Strachman v. Palmer, 1 Cir., 177 F.2d 427, at page 433, 12 A.L.R.2d 687: "Therefore, I believe the court below was not lacking in 'jurisdiction' to determine on the merits both the federal claim and the alternative common law ground of liability. But a distinction should be drawn in this connection between the existence of jurisdiction and the propriety of its exercise in a particular case. Federal courts should not be overeager to hold on to the determination of issues that might be more appropriately left to settlement in state court litigation merely because they have 'jurisdiction' to do so by virtue of a complaint making an unfounded claim of federal right. In Hurn v. Oursler, supra, there was a persuasive practical reason for the exercise of such pendent jurisdiction, for in that case the district court, in order to dispose of the federal claim of copyright infringement, was required to take the entire evidence necessary to resolve the almost parallel non-federal claim of unfair competition, and it would obviously serve everyone's convenience for the court to adjudicate the whole case, both in its federal and non-federal aspects. But in the present case it was not necessary to go to trial to dispose of the federal claim on its merits. * * *" This portion of Judge Magruder's opinion was relied on and adopted by the First Circuit in the Massachusetts Universalist Convention case, supra, which in turn was followed by the Seventh Circuit in the State of Georgia case, supra. See also Bell v. Hood, S.D.Cal., on remand, 71 F.Supp. 813, 819–20; Hart & Wechsler, The Federal Courts and the Federal System, p. 808 (1953 ed.).

 The federal claims asserted herein are "plainly unsubstantial" since previous decisions of the Supreme Court "foreclose the subject", and they are otherwise without apparent merit. Levering & Garrigues Co. v. Morrin, 289 U.S. at page 105, 53 S.Ct. at page 550.

The Second Cause of Action must therefore be dismissed, without prejudice.

Plaintiffs concede, as is clear, that their Fourth Cause of Action does not state a claim upon which relief can be granted. It must therefore be dismissed.

#### Order

The First, Third and Fourth Causes of Action are hereby dismissed. The Second Cause of Action is hereby dismissed, without prejudice.