"The decision of the court, or the report of a referee, upon the trial of the whole issues of fact, must state separately the facts found, and the conclusions of law, and direct judgment to be entered thereon, which decision so filed shall form a part of the judgment roll."

"The power to formulate the decision upon the issues, and upon which the judgment must be entered, rests exclusively with the trial tribunal." Cutter v. Gudebrod Brothers Company, 168 N. Y. 512, 61 N. E. 887. "The judgment must be vacated. The trial court may then make and file a decision disposing of the issues and directing the proper judgment in accordance with the provisions of section 1022 of the Code of Civil Procedure." Electric Boat Co. v. Howey, 96 App. Div. 410, 89 N. Y. Supp. 210.

Judgment reversed, and matter remitted to the trial justice to make and file a decision in accordance with section 1022 of the Code, without costs to either party. All concur.

---

CALDWELL et al. v. NEW YORK & H. R. CO. et al.

(Supreme Court, Appellate Division, First Department. February 9, 1906.)

1. EMINENT DOMAIN—TAKING LAND FOR STREET—PROPERTY ACQUIRED.

By resolution of the common council, approved February 1, 1832, the New York & Harlem Railroad was authorized to lay its tracks in Fourth avenue. Afterward, the railroad obtained a conveyance of a portion of the avenue. In 1850 the city commenced condemnation proceedings and acquired the fee in the avenue, the railroad company being a party, and receiving an award for its property taken. *Held*, that though the railroad still retained the right under the resolution to use the avenue for its tracks, yet, by the condemnation proceeding, the city acquired whatever property right the railroad had in the avenue, so that thereafter the abutting owners had the same rights in the avenue as abutting owners had in any other street.

2. ESTOPPEL—DEEDS—SUBSEQUENTLY ACQUIRED TITLE.

Where a deed contains no warranty of title, a title subsequently acquired by the grantor does not pass by estoppel.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Estoppel, §§ 91½–93, 108, 109.]

3. EMINENT DOMAIN—ELEVATED RAILROAD STRUCTURE—COMPENSATION.

The running of trains below the surface of the street does not interfere with easements of light and air and access appurtenant to abutting property, but the running of trains on an elevated structure is a taking of such easements for which compensation must be made.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain, §§ 282–290.]

4. SAME—DAMAGES—EVIDENCE—SUFFICIENCY.

In an action to enjoin the operation of trains on an elevated structure in a street in front of plaintiff's property, evidence *held* to justify an award of $6,200 for decrease in rental value, and $11,720 as fee damage.

Appeal from Special Term.

Action by Emily R. Caldwell and another against New York & Harlem Railroad Company and another. From a judgment for plaintiffs, defendants appeal. Affirmed.

Argued before O'BRIEN, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Alexander S. Lyman, for appellants.
Edmund L. Mooney, for respondents.

INGRAHAM, J. This action was brought to restrain the defendants from maintaining and operating a railroad upon a structure in Fourth avenue opposite the plaintiff's premises on the southwest corner of 129th street and Fourth avenue, in the city of New York.

Prior to the year 1828, one Charles Henry Hall was the owner of the premises in question, and on the 16th day of September, 1828, Hall conveyed the premises to one Russel by a conveyance, which would include the fee of the easterly half of Fourth avenue in front of the plaintiff's premises. Subsequently, on the 1st day of May, 1834, Russel reconveyed this property to said Charles Henry Hall by the same description by which he had received title to the property. On the 19th day of October, 1839, Charles Henry Hall conveyed the premises to David B. Hall by a description, which would convey the fee of the westerly half of the said avenue. By a resolution of the common council, approved by the mayor February 1, 1832, the New York & Harlem Railroad Company was permitted to construct and lay down, in pursuance of its act of incorporation, a double or single track of railroad along Fourth avenue from Twenty-Third street to the Harlem river, provided that the width of such double or single track should not exceed 24 feet, with various conditions and provisos; which ordinance was accepted by the railroad company, who, by special agreement, promised, covenanted, and agreed to and with the city of New York "to stand, abide by, and perform all the conditions and requirements in the said ordinance contained." Under this permit the railroad company constructed its road, and two tracks upon the surface of the ground were completed within the 24-foot strip in the year 1837.

By chapter 274, p. 291, Laws 1837, Fourth avenue was widened to a width of 140 feet. By deed dated January 18, 1832, recorded in the office of the register of the city of New York on August 18, 1835, Charles Henry Hall, although not then the owner of the fee of Fourth avenue in front of plaintiff's property, executed a deed, which conveyed to the Harlem Railroad Company a certain strip or parcel of land, being one of the avenues laid out on the map of the city of New York as the Fourth avenue, and as included within a space of 24 feet wide running through the centre of said avenue between 127th and 135th streets. This strip of lands is bounded northerly by the channel of the Harlem river, southerly by land belonging lately to the heirs of John F. Sickels, deceased, and east and west by lines drawn parallel to the centre of Fourth avenue, and each side thereof, a distance of 12 feet therefrom, with the power of sloping their embankments or excavations so much further than the lines of said premises thereinbefore granted as may be necessary to support their work; not, however, extending beyond the width of the avenue. No consideration was expressed, and there is no evidence that the Harlem Railroad Company paid Hall any consideration. This conveyance of Hall to the

Harlem Railroad Company did not convey this property, as, at the time of the conveyance, the westerly half of Fourth avenue, in front of plaintiff's property was owned by Russel, the deed conveying it to him having been duly recorded. It further appeared that in the year 1850 proceedings were taken by the mayor, aldermen, and commonalty of the city of New York to open Fourth avenue as a street 140 feet wide from Thirty-Eighth street to the northerly side of 135th street, and that by such proceedings the city acquired title to this land 140 feet wide for the purpose of Fourth avenue. Whatever interest in this strip of 24 feet had been acquired by the railroad company from Hall was, under this proceeding, acquired by the city of New York. The railroad company, however, continued to use the surface of the street for its road with a double track. Under an act of the Legislature (chapter 702, p. 1674, of the Laws of 1872), the railroad company was required to construct their railroad either above or below grade, and they were authorized to use four tracks instead of two, and to take such additional space in Fourth avenue as might be needed for that purpose. Under this statute the railroad company excavated a cut in front of these premises about 15 feet in depth and 50 feet in width at the bottom, with a slope of wall which increased the width of the cut to about 61 feet 8 inches at the top. The distance from the side of the cut to the building line was about 40 feet of which about 25 feet were used as a highway and about 15 feet for a sidewalk. This cut was crossed at 129th and 130th streets by bridges upon the surface of the streets, and the New York & Harlem Railroad Company, and its lessees ran trains in this cut without interruption down to February 16, 1897. By chapter 339, p. 694, of the Laws of 1892 the grade of said railroad was authorized and required to be changed, and the tracks were required to be carried past the premises on a viaduct of iron, so that all streets from 112th street to the Harlem river should be passed over with a clear height of not less than 14 feet above the surface of the pavement. This viaduct was completed, and trains ran on it in the year 1897, since which time it has been in the exclusive possession of the New York Central & Hudson River Railroad Company as lessee of the New York & Harlem Railroad Company, and upon this viaduct the trains of this company are now operated.

It seems quite unnecessary to refer to the various cases decided by the Court of Appeals prior to the reversal by the Supreme Court of the United States of the cases of Muhlker v. These Defendants, 197 U. S. 544, 25 Sup. Ct. 522, 49 L. Ed. 872, and Birrell & Kierns v. Same Defendants, 198 U. S. 390, 25 Sup. Ct. 667, 49 L. Ed. 1096, for in the case of Sander v. State of New York, 182 N. Y. 400, 75 N. E. 234, the Court of Appeals, referring to these various cases, said:

"But on appeal to the Supreme Court of the United States the Muhlker Case, with several others which followed that decision, was reversed, the Supreme Court holding that, under the decision of this court in the elevated railroad cases, abutting owners had special easements in a street, an invasion of which by the erection of a viaduct, without compensation for such invasion, was taking property without due process of law in contravention of the federal Constitution. Of course, with the decision of the Supreme Court in the Muhlker Case, our own decisions in the cases cited have ceased to be authorities."

Upon this record we think that any interest that the New York & Harlem Railroad Company acquired under the deed from Hall in 1832 was acquired by the city of New York under the condemnation proceedings, under which the city acquired the title to the whole of Fourth avenue from Thirty-Eighth street to the Harlem river, and 140 feet in width. The Harlem Railroad was a party to that proceeding. The fee of the whole avenue was acquired in that proceeding and an award was made to the Harlem Railroad Company for its property taken. There can be, I think, no question but that by that proceeding the fee of the avenue vested in the city under the act of 1813, to be held by the city in trust for a public street. This ownership of fee was not at all inconsistent with the right that the New York & Harlem Railroad Company had acquired under its contract with the city of New York to maintain tracks upon the surface of the avenue, and operate its road upon those tracks; but after the fee of the avenue was acquired by the city under these proceedings, the sole right of the defendant, the New York & Harlem Railroad Company, in and to Fourth avenue was the right that it had acquired under the ordinance of the city of 1832, and its contract with the city based upon that ordinance. Any interest in Fourth avenue that the railroad company had acquired under the Hall deed, or any title to the avenue having been thus divested, Fourth avenue became one of the public streets of the city of New York, and the abutting owners acquired the same right to Fourth avenue as a public street as the abutting owners upon other streets in the city of New York which had been opened under the act of 1813 had acquired.

Russel, the grantee of Hall, in 1828, acquired the fee of that street, and his grantees continued the owners of the fee of the street until that fee was taken from them under the condemnation proceedings instituted in 1850 by which the city of New York acquired the fee of Fourth avenue. When Hall attempted to make this conveyance to the Harlem Railroad Company, he had already conveyed the westerly half of Fourth avenue to Russel. There was no warranty of title in Hall's deed to the railroad company, and consequently the title to the street that Hall subsequently acquired by the conveyance from Russel did not by way of estoppel vest in the New York & Harlem Railroad Company, but passed by a subsequent conveyance to his grantees, from whom it was divested by the condemnation proceedings. So, it seems to me that in whatever way we may look at this case, the Harlem Railroad Company never acquired any title to the fee of Fourth avenue in front of the plaintiff's premises, and never acquired any right to use any portion of this avenue, except the right that it acquired to use the surface under the ordinance of the city of New York. Under the act of 1872 the track was depressed below the surface. This, presumably, was with the consent of the municipality and under the direction of the Legislature, but it imposed no burden upon the abutting property, as the trains were run below the surface of the ground and the rights of abutting property to air, light, and access were not interfered with. When, however, in 1897, this viaduct was completed and taken possession of by the defendants, there was appropriated by the railroad company in constructing and maintaining

this viaduct the right of the abutting owners in this street, and the taking of that property without compensation, by either the state or a railroad company under the direction of the state, was a violation of the federal Constitution as well as the Constitution of this state, and so the Supreme Court of the United States expressly decided in the Muhlker Case, supra.

The only question, therefore, that seems to us is open, is whether the awards made by the court for this property were sustained by the evidence, and whether error was committed upon the trial, which requires a reversal of the judgment. There are no exceptions to rulings upon evidence which require examination, as they have all been disposed of by other cases. The court awarded to the plaintiff $6,200 damages caused by the rental value of the property by reason of the trespass. This was a period from February 16, 1897, to June 12, 1901, four years and four months, which was at the rate of about $1,430 a year. The evidence shows that the rents actually collected for the year 1892 were $4,098.50, and that the total rent collected for the years 1897, 1898, 1899, and 1900, aggregated $10,236.50. If the plaintiff had been able to collect the rentals that he received in the year 1892 or 1893 for these four years, the amount would be at the 1892 rate, $16,384, and at the 1893 rate, $15,790. There is no cause suggested in the record for the decrease of the rent, except this structure on Fourth avenue, and, if the decrease of rental for these four years is attributed to the existence of the defendant road, the amount is in excess of that allowed by the trial court. I think, therefore, that the award made for rental damage was justified by the evidence. The court awarded as the depreciation in the fee value of the property the sum of $11,720. The testimony of the expert is that this property was, in 1892, about $69,000; that in the year 1897 the value was $57,-542 and in 1901, $44,356. This shows a depreciation in value between 1892 and 1901 of over $24,000.

I think this testimony justified the award for fee damage, and my conclusion is that the judgment appealed from was right, and should be affirmed, with costs. All concur.